**NOT FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER**

**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-22-0000128**
**20-DEC-2023**
**01:44 PM**
**Dkt. 101 MO**

NO. CAAP-22-0000128

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

K.T., Petitioner-Appellant,
v.
K.H., Respondent-Appellee

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(CASE NO. 1DA211002876)

**MEMORANDUM OPINION**
(By: Ginoza, Chief Judge, McCullen and Guidry, JJ.)

This matter arises from Petitioner-Appellant K.T.'s (**mother**) petition for a protective order based on allegations of domestic abuse. Mother appeals from the Order Dissolving Temporary Restraining Order (**Order**), entered by the Family Court of the First Circuit[1] (**family court**) on February 15, 2022. Upon careful review of the record and the brief submitted by mother, and having given due consideration to the arguments advanced and

---

[1] The Honorable Rebecca A. Copeland presided over the trial, and entered the Order.

the issues raised, we vacate and remand for further proceedings consistent with this memorandum opinion.

## I.    Background

Mother filed a Petition for an Order for Protection (**mother's petition**), pursuant to Hawaii Revised Statutes (**HRS**) § 586-3 (2018), against Respondent-Appellee K.H. (**father**).  In addition to herself, mother's petition also listed her minor son and minor daughter (collectively, **the children**), as protected persons.  Mother's petition listed five allegations of abuse, and requested a six-year protective order, temporary visitation and custody orders, and a temporary prohibition of visitation between the children and father.

The family court approved and filed an ex parte Temporary Restraining Order (**TRO**), which was amended to ensure the inclusion of the two children.  The family court ordered the State of Hawai'i, Department of Human Services (**DHS**) to investigate the matter and submit a written report to the family court; the family court further ordered the investigating DHS social worker to appear to testify at the return hearing.

DHS, through DHS social worker Jacqueline Espinueva-Xiong (**the DHS worker**), filed its Report (**the DHS Report**) with the family court on January 10, 2022.  The DHS Report included the DHS worker's findings, based *inter alia*, on interviews with the parties and the children.  The DHS Report found the allegations of abuse in mother's petition to be "unconfirmed."

The family court held a return hearing on mother's petition, in which both parties, their counsel, and the DHS worker were present.  At the hearing, father did not agree to mother's request for a six-year protective order, and the family court set the matter for trial.  Father orally moved for mother's petition to be dismissed, and for mother to be taken into custody for violation of a prior family court order in the related paternity case.  The family court denied father's motions.  Mother orally moved the family court to conduct a Hawaii Rules of Evidence (**HRE**) Rule 104 hearing,[2] and requested that the family court permit the children to testify at trial. The family court denied mother's requests.

Trial commenced in January 2022.  At trial, the family court heard testimony from the DHS worker, mother, mother's boyfriend, father, and father's girlfriend.  The family court found the DHS worker, father, and father's girlfriend to be credible witnesses; the family court also found the DHS Report to be credible.  The family court found mother and mother's boyfriend not to be credible witnesses.

---

[2]      HRE Rule 104(a) provides, in relevant part, that "[p]reliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court, subject to the provisions of subsection (b)."  HRE Rule 104(b) states that, "[w]hen the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition."

Following the trial, the family court issued the Order, which dissolved and vacated with prejudice mother's TRO, based on insufficient evidence. The family court made the following unchallenged findings of fact (**FOF**),

> 100. The court finds that [mother] has not proven the material allegations of the Petition by a preponderance of the evidence.

> 101. The court finds that [father] has shown cause why a protective order is not necessary.

> 102. The court finds that a protective order is not necessary to prevent domestic abuse or the recurrence of abuse.

> 103. Therefore, the court finds that the TRO should be dissolved and dismissed with prejudice for insufficient evidence.

The family court also made the following conclusions of law (**COL**),

> 46. [Mother] failed to meet her burden to establish that [father] committed domestic abuse against her or the parties' two minor children.

> 47. [Mother] failed to meet her burden to establish that either of her children were subjected to imminent physical harm.

> 48. [Mother] failed to meet her burden to establish that [father] committed extreme psychological abuse against her or the parties' two minor children.

> 49. [Mother] did not establish that [father] committed coercive control against her or the parties' two minor children.

> 50. "It is well-established that imposing discipline is part and parcel of caring for children, since a parent may not be able to care properly for, or exercise control over, an unruly child without the ability to impose discipline." *Hamilton v. Lethem,* 126 Haw. 294, 302, 270 P.3d 1024, 1032 (2012).

> 51. Although [father] did not raise the parental discipline defense, to the extent that this Court has found that none of his interactions with his children rise to the level of domestic abuse but to the extent that those actions, statements, and interactions may be construed as

4

parental discipline, his ability to discipline his children in such manner is constitutionally protected. *Id.*

52. The Family Court does not err in determining that a protective order is not necessary to prevent the recurrence of abuse where "[t]here is no evidence in the record, and no reasonable inferences could be drawn from the evidence, to support a conclusion that the incident was anything other than an isolated event." *Schack v. Kassebeer,* NO. CAAP-17-0000353, 142 Haw. 359, at *2, 418 P.3d 1215 (App. May 31, 2018).

53. [Mother] failed to meet her burden to establish that a protective order was necessary to prevent domestic abuse or the recurrence of abuse.

54. [Mother] failed to prove the material allegations of the Petition by a preponderance of the credible evidence.

55. Therefore, the TRO, filed December 29, 2021, is dissolved and vacated with prejudice for insufficient evidence.

Mother raises five points of error on appeal. We consider these points in turn.

## II. Discussion

### A. The Children's Testimony

Mother first contends that "the family court erred in its[] [oral] ruling prohibiting the minor children from being allowed to testify without first holding a hearing under [Hawaiʻi Family Court Rule (**HFCR**)] Rule 45.1." Mother contends that this ruling was clearly erroneous, constituted an abuse of the family court's discretion, and violated her right to substantive and procedural due process of law. Mother asserts a constitutionally protected interest in presenting her case on the merits, and in the presentation of "key eye witnesses[']" testimony at trial.

We review the family court's rulings under the abuse of discretion standard. "Generally, the family court possesses wide discretion in making its decisions and those decisions will not be set aside unless there is a manifest abuse of discretion." In re Doe, 95 Hawaiʻi 183, 189, 20 P.3d 616, 622 (2001) (cleaned up). "[W]e will not disturb the family court's decisions on appeal unless the family court disregarded rules or principles of law or practice to the substantial detriment of a party litigant and its decision clearly exceeded the bounds of reason." Id. (cleaned up).

HFCR Rule 45.1 requires family court approval before a child is summoned to appear as a witness. HFCR Rule 45.1 ("Prior approval must be obtained from the court before any child is summoned to appear as a witness so that the court may determine whether to allow the testimony of the child and the form and manner in which the child's testimony will be permitted."). "In determining whether limitations on a child testifying violates a parent's due process rights, the[] Family Court must balance competing interests, including the interest of the parent at stake, the parent's need for the child's testimony, and the best interests of the child." In re K Children, No. CAAP-11-0000805, 2013 WL 6244722, at *3 (Haw. App. Dec. 16, 2013) (SDO) (citing In re Doe Children, 85 Hawaiʻi 119,

6

123, 938 P.2d 178, 182 (App. 1997); HRS § 587A-21(d) (Supp. 2012)).

The record reflects that the family court denied mother's request that the children be permitted to testify. The family court stated that it was denying mother's request because it had admitted the children's statements into evidence via the DHS Report, but it did not provide any further explanation as to whether it had balanced the competing interests, i.e., mother's interests, mother's need for the children's testimony, and the best interest of the children. In the absence of such explanation, we cannot conclude that the family court properly exercised its discretion to deny mother's request.

The DHS Report provided son's account of the alleged abuse, as narrated by the DHS worker, including son's representation that he did not want to return to father's care,

> [Son] spoke to this DHS worker privately but was brief and did not have much eye contact with the worker; and [DHS worker] noticed he was shaking his head throughout the interview when [DHS worker] inquired about his father/mother. **[Son] began by saying he did not want to go back to his Father.** He continued to say, ["]No", and shook his head when asked further.
>
> . . . .
>
> When asked about an alleged incident ([father] threatened to strangle [daughter]) with [daughter], [son] claims they went out to dine with his Father, family friend, friend's adult daughter, and [daughter]. They were walking back to their car when his Father saw the window car down ([daughter] had forgotten to close the car window), and **he attested his Father said he was going to "strangle" [daughter].** When asked further, [son] shook his head again and did not answer.
>
> [Son] did not disclose any physical abuse by his Father and asked again if he was fearful of his Father, shaking his

7

> head, saying that he refused to go back to his Father. It
> appeared he was in a rush to end the conversation, barely
> having any eye contact with this DHS worker.

(Emphasis added.)

The DHS Report also provided daughter's account of the alleged abuse, as narrated by the DHS worker, including daughter's representation that father told her he would "strangle" her, and that she did not want to return to father's care,

> When asked about the specific allegations on 08/06/21,
> [daughter] said she approached her mother one day when
> there were people in the home. **She told her mother that
> her Father told her she [sic] would "strangle" her.** She
> relates that the family went out for dinner that included
> [son], a family friend, and her 20-year-old daughter, and
> when they got into the car, [her] **Father yelled at her and
> told her that if she ever left the window down again, he
> would "strangle." She later corrected herself and said,
> "choke."** Worker asked if [sic] what had happened next, and
> [daughter] said nothing happened after the incident.
>
> **[Daughter] reports she is not fearful of her Father;
> however, she does not want to return to him.**
>
> . . . .
>
> At the end of the conversation, [daughter] disclosed she
> did not want to return to her Father's house; she sounded
> conflicted, and later said she wanted a visit with her
> father "only one hour." When asked if there was anything
> else, she wanted to express to this worker, [daughter]
> repeated that she wanted to see her Father for "only for
> one hour."

(Emphasis added.)

The record contains no explanation by the family court as to why it would be in the children's best interest to rely solely on the DHS worker's account of their representations.[3]

---

[3] We further note that the children's statements in the DHS Report were challenged below. Mother's boyfriend testified that both children wrote statements rebutting the DHS Report; the family court did not admit these

(continued . . .)

There is no explanation in the record as to why the children, who were 14 and 12 years old at the time, would be harmed by testifying. Nor is there any explanation that reflects consideration of whether permitting the children to testify might have, conversely, furthered their best interests in the context of this HRS chapter 586 protective order case. We observe that the DHS Report, while it found the "threat of abuse and threatened neglect" to be unconfirmed, did not directly address the definition of "domestic abuse" in HRS § 586-1 (Supp. 2020) which includes, among other things, "extreme psychological abuse."[4] Although it may consider the DHS Report, the family court must nevertheless balance competing interests when deciding whether children may testify. Here, there is no explanation as to why, on balance, the children's testimony should not have been admitted to address whether "a protective order [was] necessary to prevent domestic abuse or a recurrence of abuse[.]" HRS § 586-5.5(a) (2018).

---

[3](. . .continued)
statements into evidence. Further, as discussed *infra*, the family court issued a ruling that only permitted witnesses to testify if they had direct knowledge of the allegations in the petition, and also precluded admission of a video exhibit purportedly made by son on hearsay grounds; yet the court did not allow the children (who were present for some allegations in mother's petition) to testify. On remand, the family court should consider these circumstances as part of assessing the need for the children's testimony.

[4]     HRS § 586-1 (Supp. 2020) defines "domestic abuse" to include "[p]hysical harm, bodily injury, assault, or the threat of imminent physical harm, bodily injury, or assault, extreme psychological abuse, coercive control, or malicious property damage between family or household members[.]"

We conclude, on this record, that the family court abused its discretion by summarily denying mother's request for children to testify without balancing the competing interests of mother and the children.

## B.  The DHS Worker's Testimony and Report

Mother contends that "the family court erred by admitting into evidence the testimony of the DHS worker and her report" because the DHS worker was not qualified in court as an expert in domestic violence, the DHS worker's testimony was irrelevant, and the DHS Report contained hearsay and was not a final disposition.  Mother specifically challenges the following conclusions of law,

> 11.  According to Chapter 586: "Reports by the department of human services; court responsibilities.  In cases where there are allegations of domestic abuse involving a family or household member who is a minor or an incapacitated person as defined in section 560:5-102, the employee or appropriate nonjudicial agency designated by the family court to assist the petitioner shall report the matter to the department of human services, as required under chapters 350 and 587, and shall further notify the department of the granting of the temporary restraining order and of the hearing date.  The department of human services shall provide the family court with a written report on the disposition of the referral.  The court shall file the report and mail it to the petitioner and respondent at least two working days before the hearing date, if possible.  If circumstances prevent the mailing of the report as required in this section, the court shall provide copies of the report to the petitioner and respondent at the hearing.  The report shall be noted in the order dismissing the petition or granting the restraining order."  HRS § 586-10.5.
>
> . . . .
>
> 13.  Pursuant to Section 586-10.5, which requires this Court to "note[] [the DHS written report] in the order dismissing the petition or granting the restraining order," this court did not err or otherwise abuse its discretion in considering the DHS Social Worker's Report, filed on January 10, 2022.

14.  Because this Court was statutorily required to consider the DHS Social Worker's Report, this Court did not err or otherwise abuse its discretion in having the Social Worker testify at trial.

15.  Because this Court was statutorily required to consider the DHS Social Worker's Report, it did not err or otherwise abuse its discretion in entering the Report as the Court's Exhibit "1" at trial.

16.  The Social Worker's Report, filed on January 10, 2022, was not inadmissible based upon hearsay.

17.  The Social Worker's Report was not inadmissible under HRS 587A.

.  .  .  .

19.  The court did not err or otherwise abuse its discretion in allowing the Social Worker to testify as to the Report, filed January 10, 2022, the contents of the Report or the Social Worker's investigation, or any information contained in the Report.

20.  Nothing in the Report filed January 10, 2022, or the Social Worker's testimony was otherwise impermissibly confidential such that it should not have been allowed at trial or considered by this Court.  To the contrary, this Court is statutory [sic] required in domestic abuse cases when there are allegations of domestic abuse or the threat of domestic abuse against a child or children to refer the matter to the DHS for investigation, this Court is statutorily mandated to require the DHS to submit a written report to the court regarding the disposition of the referral, this Court is statutorily required to file the report in the case, and it is required to consider the report in making its decision to granting or dismissing the petition.  *See* HRS § 586-10.5.

21.  [Mother] did not make any legally viable objections that prevented this Court from considering the Social Worker's Report or testimony, or in admitting the Social Worker's Report into evidence.

We conclude that the above conclusions of law are not wrong.  Fisher v. Fisher, 111 Hawaiʻi 41, 46, 137 P.3d 355, 360 (2006) ("the family court's COLs are reviewed on appeal *de novo*, under the right/wrong standard").  The family court did not err in admitting the DHS Report.  The DHS Report is a "final disposition."  HRS § 586-10.5 (2018) requires that the

11

"department of human services shall provide the family court with a written report on the disposition of the referral" and further provides that "[t]he report shall be noted in the order dismissing the petition or granting the restraining order." The family court verified at trial, on January 12 and 19, 2022, that the DHS Report was the DHS worker's final disposition in compliance with HRS § 586-10.5. The DHS Report found the threat of abuse and threatened neglect to the children to be "unconfirmed."[5]

The TRO directed that the "Dept. of Human Services is ordered to investigate this matter, submit a written report to the Court, and the investigating social worker shall appear to testify at the hearing." The DHS Report, which contains third-party statements, falls within the public record hearsay exception. HRE Rule 803(b)(8)(C) (permitting "in civil proceedings" the admission of public records and reports containing "factual findings resulting from an investigation made pursuant to authority granted by law"); State v. Abrigo, 144 Hawaiʻi 491, 493, 445 P.3d 72, 74 (2019) ("An exception to the evidentiary rule against hearsay typically allows public records to be admitted into evidence to prove the truth of their

_____

[5] The DHS worker testified that "unconfirmed" means "that there is no risk of abuse to the kids or neglect."

contents, as such documents are generally presumed to be accurate and reliable.").

The family court did not err, moreover, in admitting the DHS worker's testimony at trial. "Whether expert testimony should be admitted at trial rests within the sound discretion of the trial court and will not be overturned unless there is a clear abuse of discretion." State v. Fukagawa, 100 Hawai'i 498, 503, 60 P.3d 899, 904 (2002) (citations omitted). The DHS worker testified as to her experience in handling investigations and TRO cases as an "investigator assessment worker for 20 years" and as a DHS social worker since 2012. HRS § 587A-19 (2018) provides that "[a] person employed by the department as a social worker in the area of child protective services or child welfare services shall be presumed to be qualified to testify as an expert on child protective or child welfare services." Admission of the DHS worker's testimony, on this record, did not constitute abuse of discretion.

## C. Rulings Regarding Legal Memoranda and Witness Testimony

Mother contends that "the family court erred in its[] rulings that counsel could not file memoranda and that only witnesses who were present at the allegations in the petition could testify during the hearing[.]" The family court informed

counsel below that no legal memoranda would be admitted[6] in the specific context of denying mother's request for the setting of an HRE Rule 104 hearing.[7]  We conclude, on this record, that the family court did not abuse its discretion by informing counsel

---

[6]     The family court ruled as follows,

> MS. KAWAUCHI [Mother's counsel]:  My motion is to request that this -- this case be set also for a 104 hearing so that offers of proof can be made for the witnesses to testify and for evidence to be presented.
>
> And the reason why I ask for that, Your Honor, is because of the number of witnesses I'm asking for, and I want the Court to have ample time to consider my offers of proof before I call them on Wednesday and have, you know, the Court's calendar there taken with so many of them.
>
> But I'd like to set it for a 104 prior to the start of the trial so that we can clear up any -- clear up any memorandum or -- that you might want to consider.  I am -- I can file memos --
>
> THE COURT:  There will --
>
> MS. KAWAUCHI:  -- by Friday --
>
> THE COURT:  -- be no memos in this case.  This is a DA [domestic abuse] case.  No memos will be permitted.
>
> MS. KAWAUCHI:  Okay.  All right.  So offers of proof, then, you would like to be made orally at the time --
>
> THE COURT:  I'll explain --
>
> MS. KAWAUCHI:  -- (indiscernible)?
>
> THE COURT:  -- when I will have those made.
>
> MS. KAWAUCHI:  Okay.
>
> THE COURT:  I'm not going to set it for a 104 hearing.

[7]     Mother does not appeal from the family court's decision to deny the HRE Rule 104 hearing.

that legal memoranda would not be permitted on a matter that the family court had already resolved when it denied the request for an HRE Rule 104 hearing.

We further conclude that the family court did not err in not permitting witnesses to testify "[i]f they were not present for and thus do not have direct knowledge of the allegations in the petition[.]"  HRE Rule 602, which is instructive here,

> provides that "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."  The Commentary to HRE Rule 602 explains that, "'Personal knowledge,' for purposes of this rule, means that the witness perceived the event about which he testifies."  In other words, witnesses may not testify based on "guesswork" or "speculation," such as when the witness concludes that a fact "must have" been true.  *See* Addison M. Bowman, *Hawai'i Rules of Evidence Manual* § 602-1[5] (2012).

State v. Apollonio, 130 Hawai'i 353, 361, 311 P.3d 676, 684 (2013) (cleaned up); see also HRE Rule 602 cmt. ("Evidence of personal knowledge is a general foundation requirement for admissibility of all evidence[.]").  The family court did not abuse its discretion in requiring, consistent with HRE Rule 602, that testifying witnesses must have direct, firsthand knowledge of the events that they were testifying to.

**D.  Video Evidence**

Mother contends that "the family court erred in refusing to admit into evidence videos made by minor child on the ground that the videos were made in contemplation of

15

litigation where the record shows that the court failed to

review the entire exhibit before making its ruling[.]"[8]  Mother

_____

        [8]        Mother contends that the family court abused its discretion in
making this ruling, and challenges FOF 49, 50, 51, 53, and 57, and COL 30,
31, 32, 33, 34, 35, 36, 37, and 38.  These FOF and COL state,

> [FOF] 49. Over objection by [father], the court initially
> received into evidence the videos proffered by [mother]
> during [mother's boyfriend's] testimony.

> [FOF] 50. However, upon commencement of the first such
> video, the parties' son stated that he was speaking for
> himself and his sister because his sister is nervous about
> the court thing.

> [FOF] 51. The court immediately ordered the video to cease
> being played, and reversed its prior to decision to receive
> the videos into evidence.

> . . . .

> [FOF] 53. The court further finds the statement made by the
> son at the onset of the first such video made it clear that
> the proffered videos were in fact made in contemplation of
> pending or anticipated litigation, were made at the
> instigation of [mother], and therefore also not made in
> good faith.

> . . . .

> [FOF] 57. Rather, the court finds that the videos were not
> made until well after the alleged events, and clearly in
> contemplation of pending or anticipated litigation.

> . . . .

> [COL] 30. HRE Rule 804 governs exceptions to the hearsay
> rule where the declarant is unavailable.

> [COL] 31. Under HRE Rule 804(a), in part, the
> unavailability of a witness "includes situations in which
> the declarant: (1) Is exempted by ruling of the court on
> the ground of privilege from testifying concerning the
> subject matter of the declarant's statement; (2) Persists
> in refusing to testify concerning the subject matter of the
> declarant's statement despite an order of the court to do
> so; (3) Testifies to a lack of memory of the subject matter
> of the declarant's statement; (4) Is unable to be present
> or to testify at the hearing because of death or then
> existing physical or mental illness or infirmity; or (5) Is
> absent from the hearing and the proponent of the
> declarant's statement has been unable to procure the

(continued . . .)

---

[8](. . .continued)

declarant's attendance by process or other reasonable means."  (Format modified).

[COL] 32. HRE Rule 804(b)(5) provides for an exception to the hearsay rule "if the declarant is unavailable as a witness" and the proffered statement by the declarant is one of recent perception, defined as "[a] statement, not in response to the instigation of a person engaged in investigating, litigating, or settling a claim, which narrates, describes, or explains an event or condition recently perceived by the declarant, made in good faith, not in contemplation of pending or anticipated litigation in which the declarant was interested, and while the declarant's recollection was clear[.]"

[COL] 33. The videos proffered by [mother] of statements by her son constitute inadmissible hearsay and are not otherwise excepted from the hearsay rule under HRE Rule 804(b)(5).

[COL] 34. HRE Rule 803 governs exceptions to the hearsay rule where the availability of the declarant is immaterial.

[COL] 35. Under HRE Rule 803(b)(1), the present sense impression of a declarant is an exception to the hearsay rule.  Present sense impression is "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition or immediately thereafter."

[COL] 36. The videos were not admissible as an exception to the hearsay rule under HRE Rule 803(b)(1).

[COL] 37. Under HRE Rule 803(b)(24), provides other instances in which statements by a declarant are excepted from the hearsay rule under certain circumstances: "A statement not specifically covered by any of the exceptions in this paragraph (b) but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts, and (B) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant.

[COL] 38. The videos were not admissible as an exception to the hearsay rule under HRE Rule 803(b)(24).

17

requested to introduce three video recordings, collectively as
Exhibit 1, as follows,

> THE COURT:  Okay.  We're back on record. . . .
> We are going to play Exhibit 1.  Is it broken up into three
> different videos?
>
> MS. KAWAUCHI [Mother's Counsel]:  Yes.
>
> THE COURT:  Okay.  So this is Exhibit 1 . . . . 1A?
>
> . . .
>
> (The following video was played:)
>
> [Son]: Hello my name is [son].  (Inaudible.)  I'm
> gonna speak on behalf of [daughter] as well 'cause kinda --
> she's kinda in a bad mood and she's very nervous about this
> court thing.  I am too making this video, but I'm trying my
> best to.
>
> Main thing is I guess --
>
> THE COURT: Okay. Pause it.
>
> [Son]: -- I love being with --
>
> THE COURT: Okay.  So his very first portion of his
> testimony, Ms. Kawauchi, indicates that he's going to be
> speaking on behalf of sister also because in part she's
> nervous about this court thing.  What's he talking about
> when he says "court thing," Ms. Kawauchi?
>
> MS. KAWAUCHI: That I don't know, Judge.
>
> THE COURT: Okay. [Mother's boyfriend]?
>
> THE WITNESS:  My best guess from what I have seen,
> Your Honor, is that there was -- I believe there was
> something on the 30th.  There was a hearing to some extent
> on the 30th --
>
> THE COURT: Okay.
>
> THE WITNESS: -- that was taking place.
>
> THE COURT: Ms. McGivern, do you know --
>
> MS. MCGIVERN [Father's Counsel]: Well, there --
>
> THE COURT: -- what happened on the 30 --
>
> MS. MCGIVERN: -- there was an ongoing criminal case
> of Ms. Kawauchi, but I'm concerned --

THE COURT: No, but what hearing was on the 30th? Was there a paternity case hearing, a TRO case hearing, or a criminal case hearing to your knowledge on the 30th?

MS. MCGIVERN: I -- I don't believe so.

THE COURT: Okay. Well, he is referring to a court thing. Based on that statement, the Court is going to retract its earlier ruling on the admissibility of 1A. And 1A it appears has been made in contemplation of some type of litigation, even if we don't know what kind of litigation.

Let's move on to 1B, which is the second recording.

MS. KAWAUCHI: Objection, Your Honor.

THE COURT: Was it made on the same day?

MS. MCGIVERN: Yes.

THE WITNESS: Same time.

THE COURT: Oh, they were consecutive?

THE WITNESS: They're one --

MS. MCGIVERN: They're --

THE COURT: -- one right after another.

. . . .

THE COURT: . . . So was it in multiple -- to your knowledge, [mother's boyfriend], was it multiple recordings because he just did it in snippets?

THE WITNESS: As far as I know, it was -- the level -- the length of time that the video --

THE COURT: Would record?

THE WITNESS: -- would record.

THE COURT: Okay. All right. Then the Court is going to reverse its earlier ruling. Exhibit 1 will not be permitted into evidence and will not be played.

MS. KAWAUCHI: Okay. All right.

We conclude that the family court did not abuse its discretion by denying mother's request to introduce the Exhibit 1 video into evidence. See State v. Ortiz, 91 Hawaiʻi 181, 189, 981 P.2d 1127, 1135 (1999) ("Evidentiary rulings are

reviewed for abuse of discretion, unless application of the rule admits of only one correct result, in which case review is under the right/wrong standard.") (citation omitted). In reviewing the first video, Exhibit 1A, the family court determined that the video was made in contemplation of a separate litigation, and that Exhibit 1A was the first part of what was meant to be a single recording together with the other Exhibit 1 videos. As such, the family court was not wrong in concluding that Exhibit 1 constituted impermissible hearsay that did not fall within an exception contemplated by HRE Rules 803 or 804. On this record, the family court did not abuse its discretion in denying the admission of Exhibit 1.

## E. Witness Credibility

Mother contends that "the family court erred by finding the testimony of [mother] and [mother's] witness [mother's boyfriend] not credible, as such, the ruling constitutes an abuse of discretion[.]"[9] The family court, as the

---

[9] Mother's points of error contend that the following FOF of the family court are clearly erroneous: 46, 48, 58, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 81, 82, 83, 87, 88, 89, and 90. These FOF state,

> 46. The court did not find [mother]'s testimony credible.
>
> . . . .
>
> 48. The court did not find [mother's boyfriend]'s testimony credible.
>
> . . . .
>
> 58. The court also finds that [mother] failed to establish, through [mother's boyfriend's] testimony which

(continued . . .)

20

---

[9](. . .continued)

the court did not find credible, that there were any circumstantial guarantees of trustworthiness.

. . . .

69. [Mother] and [mother's boyfriend] were not credible witnesses.

70. As part of her closing argument, [mother] asserted that [father]'s emotional abuse is a form of Munchhausen syndrome by proxy. This is not persuasive as there is absolutely no evidence, medical or otherwise, to support this claim.

71. At trial, [mother] did not ask this Court to take judicial notice of any definition – denotative, connotative, or otherwise from popular culture or based on the news – as to the meaning of "strangle" or "strangulation."

72. At trial, [mother] also did not provide any evidence that either of the parties' minor children were aware any popular culture or news references to "strangulation," or that the children's reactions to the event alleged in the Petition was in any way impacted or exacerbated by any such awareness of popular culture or news references to "strangulation."

73. The court does not find credible the allegations that [father] told son that "[h]is life would be a living hell if he came back to his mom and that he'd be a failure in life," as alleged in paragraph 5B. There is no credible evidence to support this allegation. The court finds credible [father]'s testimony that this never occurred.

74. The court does not find credible the allegation that any actions or statements by [father] caused either of the children to have suicidal tendencies.

75. The court does not find credible the allegation that [father] otherwise caused son to "slic[e] his skin on his wrist because of continuous psychological abuse" or "verbal threats" as alleged in paragraph 5C.

76. The court does not find credible the allegation that the parties' daughter "was self-harming" as a result of "the stress created by [father]'s constant verbal harassment of" her.

77. Rather, the court finds credible that any suicidal acts, thoughts, or tendencies by one or both of the children occurred while they were in [mother]'s care.

(continued . . .)

[9](. . .continued)

78. The court does not find credible [mother]'s allegations that [father] made financial threats against her via third persons and/or that any such messages received by [mother] from third persons not named as respondents in her Petition against [father] in any way originated by or through [father].

79. The court does not find credible [mother]'s allegations that [father] sought to obtain money to have his debts paid through third persons.

. . . .

81. The court does not find credible that third persons expected [mother] to pay in the millions.

82. Additionally, with regard to allegations 5A and 5E, there is absolutely no credible testimony or evidence to support these two allegations in their entirety.

83. The court does not find credible [mother]'s testimony that the incident alleged in paragraph 5A rises to the level of extreme psychological abuse or coercive control.

. . . .

87. Neither the allegation in paragraph 5A nor [mother]'s related testimony and evidence establishes a "course of conduct" that "seriously alarm[ed] or disturb[ed] consistently or continually bother[ed]" [mother].

88. Neither the allegation in paragraph 5A nor [mother]'s related testimony and evidence establishes that the alleged conduct "would cause a reasonable person to suffer extreme emotional distress."

89. Neither the allegation in paragraph 5A nor [mother]'s related testimony and evidence establishes "a pattern of threatening, humiliating, or intimidating actions," nor any pattern of behavior that constitutes coercive control, as that term is defined under Hawai'i law.

90. In addition, with respect to allegation 5E, there is no credible evidence that [father] directed anyone to contact the [mother] in order to collect his debts. The Court finds the [father]'s testimony credible that he did not do so.

(Footnote omitted.)

fact finder, determines witness credibility. This court will not disturb the family court's determination of credibility on appeal. In re Doe, 95 Hawaiʻi 183, 190, 20 P.3d 616, 623 (2001) ("It is well-settled that an appellate court will not pass upon issues dependent upon the credibility of witnesses and the weight of the evidence; this is the province of the trier of fact.") (citations omitted). We conclude that the family court did not err in finding that mother and mother's boyfriend were not credible witnesses.

### III. Conclusion

For the reasons explained in section IIA, the family court's February 15, 2022 Order Dissolving Temporary Restraining Order, and June 1, 2022 Findings of Fact and Conclusions of Law, are vacated. We remand with instructions to the family court to make a determination, based on a proper balancing of mother's interests and the best interest of the children, as to whether the family court should have granted mother's request for the children to testify at trial. The family court is further

instructed to take appropriate actions consistent with that

determination and this memorandum opinion.

DATED:  Honolulu, Hawaiʻi, December 20, 2023.

On the brief:

Jamae K.K. Kawauchi,
for Petitioner-Appellant.

/s/ Lisa M. Ginoza
Chief Judge

/s/ Sonja M.P. McCullen
Associate Judge

/s/ Kimberly T. Guidry
Associate Judge